No. 77–301. LEWIS ET AL. *v.* HYLAND ET AL. C. A. 3d Cir. Certiorari denied.

MR. JUSTICE MARSHALL, with whom MR. JUSTICE BRENNAN joins, dissenting.

I dissent from the denial of the petition for certiorari.

Petitioners sought relief under 42 U. S. C. § 1983 on behalf of a class of persons who travel on the public highways and toll roads of New Jersey and who, it was alleged, have been subjected to a "pattern and practice" of unreasonable stops and searches by the New Jersey State Police. Petitioners' complaint further defined a subclass of "long-haired highway travelers," who allegedly have been subjected to illegal stops and searches solely because of their "highly individualized personal appearance." The Court of Appeals found the complaint sufficient to survive a motion to dismiss, *Lewis* v. *Kugler,* 446 F. 2d 1343 (CA3 1971), and petitioners then had an opportunity to prove their case against respondents, the Attorney General of New Jersey, the Superintendent of State Police, 14 named state police troopers, and a class of unnamed troopers.

At trial, according to the Court of Appeals, petitioners "substantiated (and, indeed, augmented) their initial allegations." 554 F. 2d 93, 94 (CA3 1977). The court summarized "[t]he district court's extensive findings of fact" as "reveal[ing] what can only be described as callous indifference by the New Jersey State Police for the rights of citizens using New Jersey roads." *Ibid.* In the view of the Court of Appeals, petitioners would clearly have been entitled to injunctive relief, "in light of [their] demonstration of numerous violations of their constitutional rights," were it not for this

Court's ruling in *Rizzo* v. *Goode,* 423 U. S. 362 (1976). 554 F. 2d, at 95.

Any lower court decision that reads a single opinion of this Court as effectuating a sharp change in the law deserves careful scrutiny before certiorari is denied, at least when the opinion does not claim to be making any such change. When the lower court's reading of our opinion results in the denial of relief to a large class of persons whose federal constitutional rights were repeatedly violated—as established by substantial evidence credited by the finder of fact, following the expenditure of many hours of judges' and litigants' time—a strong case is established for the granting of certiorari. When the opinion of this Court that is the sole cause of the denial of relief is grounded in particular facts and contains alternative rationales, the case for granting certiorari becomes compelling.

I joined my Brother BLACKMUN's dissenting opinion in *Rizzo* v. *Goode, supra,* and continue to believe that the case was wrongly decided. One can accept *Rizzo,* however, and yet view it as only one step in, rather than the end of, this Court's continuing effort to define the contours of § 1983 suits against public officials who, with varying degrees of personal participation, have allowed the violation of citizens' rights by subordinate employees. Certainly the lower courts have not found in *Rizzo* any unambiguous signal; to the contrary, they have given the opinion varying interpretations that suggest the need for guidance from this Court.[1]

---

[1] See, *e. g., Duchesne* v. *Sugarman,* 566 F. 2d 817 (CA2 1977); *Youakim* v. *Miller,* 562 F. 2d 483, 491 (CA7 1977); *Washington Mobilization Committee* v. *Cullinane,* 184 U. S. App. D. C. 215, 566 F. 2d 107 (1977) (statements by Bazelon, C. J., and Leventhal, J., as to reasons for voting to deny rehearing en banc); *Butler* v. *Cooper,* 554 F. 2d 645, 647–648 (CA4 1977); *id.,* at 649–650 (dissenting opinion); *Welsch* v. *Likins,* 550 F. 2d 1122, 1131–1132 (CA8 1977); *Kite* v. *Kelley,* 546 F. 2d 334, 336–337 (CA10 1976); *Illinois Migrant Council* v. *Pilliod,* 540 F. 2d 1062, 1067–1068 (CA7 1976), modified in part on rehearing en banc, 548 F. 2d 715 (1977); 540 F. 2d, at 1072–1073 (dissenting opinion); *Sims* v. *Adams,* 537 F. 2d 829,

On its facts, moreover, this case is quite different from *Rizzo*. There, the extent of the defendant officials' knowledge of their subordinates' unconstitutional actions was uncertain; plaintiffs apparently proceeded on the theory that the officials had a duty to act to correct a statistical pattern of abuse, regardless of their knowledge of the pattern. See 423 U. S., at 376. Here, petitioners' evidence established that complaints about illegal searches were made to state police officials. The officials were, in the words of the Court of Appeals, "insensitiv[e]," "obliviou[s]," and "indifferen[t]" to these complaints. 554 F. 2d, at 101. A failure to act in the face of knowledge of subordinates' illegal actions is surely different from a failure to correct a statistical pattern of which one is not aware. Cf. *Estelle* v. *Gamble,* 429 U. S. 97, 104–106 (1976) (distinguishing, for Eighth Amendment purposes, between "deliberate indifference" to prisoners' medical needs and accidental failure to provide adequate care).

There is thus a closer nexus here between the inaction of responsible officials and the violations of rights by subordinates than there was in *Rizzo*. In addition, the plaintiff class is narrower here,[2] named defendants have engaged in deliberate

---

832 (CA5 1976); *Shifrin* v. *Wilson,* 412 F. Supp. 1282, 1301–1302, n. 22 (DC 1976).

[2] The class of New Jersey highway travelers and the subclass of long-haired highway travelers, though large and undifferentiated, nevertheless have more plainly identical interests with regard to police illegality than did the classes of all Philadelphia residents and all minority citizens that were certified in *Rizzo* v. *Goode,* see 423 U. S., at 366–367. Petitioners point out, moreover, that the plaintiff classes in *Rizzo* were coextensive with the city's electorate and thus had recourse to the political process to remedy official tolerance of abuse of civil rights, a factor that may have made the need for federal-court intervention appear less compelling. In the instant case, by contrast, many members of the class and subclass are interstate travelers who are merely driving through New Jersey and have no opportunity to correct official indifference through the State's political process.

wrongdoing,[3] and the injunctive relief sought is far less intrusive in terms of judicial interference with police operations.[4] Certiorari should be granted in this case to clarify the scope of the *Rizzo* decision.

---

[3] In *Rizzo* the policemen who were found to have violated constitutional rights were not named as defendants, a factor twice emphasized by the Court. See 423 U. S., at 371, 375. The only named defendants were supervisory officials. *Id.*, at 364–365, n. 1. Here the defendants included the individual troopers who had committed illegal acts, as well as a class of unnamed troopers who had participated in the illegality. See 554 F. 2d, at 95 n. 3. The presence of the supervisory defendants in this case may thus have been for the purpose of shaping an effective remedy. Cf. *Hills* v. *Gautreaux*, 425 U. S. 284, 297 (1976) (once violation of rights is established, court of equity has broad power in fashioning remedy).

[4] The injunction in *Rizzo* "significantly revis[ed] the internal procedures of the Philadelphia police department." 423 U. S., at 379. Petitioners here, by contrast, would be content with "[a] simple notification from superiors to subordinates that they [may] not constitutionally stop and search vehicles solely because of the personal appearance of the occupants." Pet. for Cert. 23.