**Linnie Carl McCOLLAN,
Plaintiff-Appellant,**

v.

**G. R. TATE et al., Defendants,**

**T. L. Baker and Transamerica Insurance Company, Defendants-Appellees.**

No. 76–1268.

United States Court of Appeals,
Fifth Circuit.

June 19, 1978.

Rehearing Denied Aug. 10, 1978.

510

Douglas R. Larson, Dallas, Tex., for plaintiff-appellant.

A. W. SoRelle, III, Amarillo, Tex., for T. L. Baker.

Samuel C. Kiser, Asst. County Atty., Kerry R. Knorpp, County Atty., Amarillo, Tex., for T. L. Baker & Transamerica Ins. Co.

Before WISDOM and GEE, Circuit Judges, and VAN PELT,[*] District Judge.

GEE, Circuit Judge:

Plaintiff's name is Linnie McCollan. His brother, whose real name is Leonard McCollan, somehow procured a duplicate of plaintiff's driver's license, identical to plaintiff's except that Leonard's picture graced it instead of Linnie's. Leonard was arrested on a narcotics charge and since he was carrying the doctored driver's license, he was booked under the name of Linnie C. McCollan.

Leonard was released on bond. His bondsman received an order allowing him to surrender his principal and a warrant issued for the arrest of Leonard. Since Leonard had been using his brother's name, the warrant was in the name of Linnie C. McCollan. Linnie (the real Linnie) was arrested on the warrant in Dallas County on December 26, 1972. He was kept in a Dallas jail until December 30, when deputies from Potter County, where the warrant had issued, took custody of him. He was kept in the Potter County Jail until January 2, 1973, when the error was noticed and he was released.

Linnie subsequently brought this action in federal court claiming violation of his rights under the fourteenth amendment and section 1983. The trial judge directed a verdict for Potter County Sheriff T. L. Baker and his surety, defendant Transamerica Insurance Company. Plaintiff's claims against all other defendants were dismissed with prejudice. Only the directed verdict as to Baker and Transamerica is before this court on appeal. Having originally postponed decision in this case pending the Supreme Court's disposition of *Procunier v. Navarette,* —— U.S. ——, 98 S.Ct. 855, 55 L.Ed.2d 24 (1978),[1] we now hold that plaintiff's case should have been presented to the jury and, accordingly, we reverse and remand for a new trial.

The facts as developed at trial are largely undisputed, and to the extent there is conflict we must view the evidence in the light most favorable to the nonmoving party, in this case the plaintiff. *See Boeing Co. v. Shipman,* 411 F.2d 365 (5th Cir. 1969) (en banc). If the evidence, when viewed in this light, is so one-sided that reasonable minds could not reach a contrary verdict, the district court's directing the verdict in favor of the defendant was proper. *Ibid.* If reasonable minds could reach contrary conclusions, the issue should have gone to the jury.

When the Dallas police notified the Potter County Sheriff's Department that they had arrested "Linnie C. McCollan," the identification of plaintiff as the man wanted under the warrant was verified by his birthdate as shown on his license. Unfortunately, the written information on both Linnie C. McCollan's and Leonard (alias Linnie C.) McCollan's driver's licenses was identical. So this verification failed to reveal the error. The Potter County Sheriff's Department did not send the mugshots and fingerprints of Leonard McCollan which it had in its files. Nor did the sheriff's deputies who drove to Dallas to pick up the plaintiff take this identifying material with them. When the deputies brought plaintiff to the Potter County Jail on December 30, no one was on duty in the Identification Department, and no one compared plaintiff with the photographs and fingerprints on file. Had the photographs and fingerprints been sent or carried to Dallas or had the identifying information in the file at the sheriff's office been checked, the mistake would have been evident. Although plaintiff is Leonard's brother, he does not resemble Leonard in appearance.

The leading case in the Fifth Circuit on a sheriff's liability for false imprisonment un-

---

[*] Senior District Judge of the District of Nebraska, sitting by designation.

[1.] *Procunier,* which had been argued but not decided at the time of oral argument in this case, presented, *inter alia,* the issue of whether simple negligence on the part of a state official could give rise to § 1983 liability. *See Procunier v. Navarette,* —— U.S. ——, ——, 98 S.Ct. 855, 862–63, 55 L.Ed.2d 24 (Burger, C. J., dissenting). However, the Supreme Court disposed of the case on other grounds.

der section 1983 is *Bryan v. Jones,* 530 F.2d 1210 (5th Cir.) (en banc), *cert. denied,* 429 U.S. 865, 97 S.Ct. 174, 50 L.Ed.2d 145 (1976). The court, sitting en banc, held that a sheriff has the kind of qualified immunity which the Supreme Court has recognized in certain other public officials. *See Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975); *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Under *Bryan* a sheriff is not liable under section 1983 if he acted in good faith and he acted reasonably. 530 F.2d at 1215.

 *Bryan* made clear that in a section 1983 false imprisonment action the reasonable good faith of the sheriff comes into play only as a defense. To make out a prima facie case, a plaintiff need show only: (1) intent to confine; (2) acts resulting in confinement; and (3) consciousness of the victim of confinement or resulting harm. 530 F.2d at 1213, *citing* Restatement (2d) Torts § 35 (1965). There can be no doubt that the sheriff's deputies intended to confine and did confine the plaintiff. Similarly, there can be no doubt that plaintiff was aware of the fact that he was being held in jail. Since the deputies' actions were authorized by Sheriff Baker and the same actions were in keeping with the policies of the Potter County Sheriff's Department at that time, plaintiff established his prima facie case against Sheriff Baker. *See Jennings v.*

*Patterson,* 460 F.2d 1021 (5th Cir. 1972). *Cf. Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976) (supervisory officials not subject to injunction under section 1983 where no showing that they authorized or approved lower officials' misconduct). Assuming *arguendo* that the actions and intent of the deputies are not properly attributable to the sheriff,[2] on the facts of this case plaintiff was entitled to go to the jury on the basis of Sheriff Baker's own action or inaction. To incur liability under section 1983 a state official need not directly subject a person to a deprivation of his constitutional rights. The language of the statute[3] and the holdings of this court make clear that he can be held liable if he *causes* the plaintiff to be subjected to a deprivation of his constitutional rights. *See Sims v. Adams,* 537 F.2d 829 (5th Cir. 1976). Sheriff Baker's failure to require his deputies to transmit the identifying material described above "caused" plaintiff's continued detention. Plaintiff has made out a prima facie case under *Bryan,* and Sheriff Baker can escape liability only if he acted in reasonable good faith. As the court said in *Bryan,* "[i]f [the sheriff] negligently establishes a . . . system in which errors of this kind are likely, he will be held liable." 530 F.2d at 1215.

 The only real question in this case is whether the sheriff's failure to introduce a policy of sending photographs and fingerprints or his failure to have someone on

---

**2.** Prior § 1983/false imprisonment cases have not dealt squarely with the problem of whether a sheriff must have personal knowledge that a person is being held in his jail in order for him to be liable under § 1983. *See Bryan v. Jones, supra; Whirl v. Kern,* 407 F.2d 781 (5th Cir.), *cert. denied,* 396 U.S. 901, 90 S.Ct. 210, 24 L.Ed.2d 177 (1969). In *Whirl* the court discussed the absence of personal knowledge only with respect to the state-law false imprisonment issue, over which the court had pendent jurisdiction. 407 F.2d at 795. With respect to the federal false imprisonment claim under § 1983, *Whirl* held that a sheriff need not know that a prisoner's detention is *unlawful.* But the opinion says nothing about a sheriff's knowledge that the prisoner is being detained and § 1983 liability. *Bryan* answered the qualified immunity question but said nothing about the application of respondeat superior notions to

plaintiff's prima facie case. *See also Lewis v. Hyland,* 434 U.S. 931, 98 S.Ct. 419, 54 L.Ed.2d 291 (1977) (Marshall, J., dissenting from denial of certiorari); Developments, 90 Harv.L.Rev. 1133, 1206–09 (1977).

**3.** Section 1983 reads:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, *or causes to be subjected,* any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

(Emphasis added).

duty to check plaintiff's identity upon his arrival or during his stay at Potter County Jail was unreasonable.[4] Since plaintiff in no way challenges the subjective good faith of the sheriff, his qualified immunity hangs on the reasonableness of his action or inaction. The sheriff himself testified that it was a standard practice in most sheriff's departments the size of his to send such identifying material. Certainly the jury could have found that he behaved unreasonably in failing to institute a similar policy. Alternatively, the jury might have concluded that comparing the date of birth, as listed in the sheriff's files, with the date of birth on plaintiff's driver's license when he was arrested in Dallas was a sufficient safeguard against arresting and detaining the wrong person and that it was reasonable for the sheriff not to require his deputies to take the additional precaution of sending the photographs and fingerprints.

Defendant contends that the existence of the warrant for the arrest of a person named Linnie C. McCollan created a duty in him to arrest and detain the plaintiff. He relies on *Perry v. Jones*, 506 F.2d 778 (5th Cir. 1975), for the proposition that since plaintiff was arrested and detained on a warrant fair on its face, he has committed no wrong cognizable under section 1983.

Defendant misperceives his duties. His argument would find a duty in a police officer or sheriff to arrest any person who bears the name in which a warrant was issued. A warrant for John Smith would put a policeman under a duty to arrest the first John Smith, or perhaps all John Smiths, he encountered. Such cannot be the law.

We are not saying that a sheriff is under a duty to make an independent investigation as to the guilt or innocence of a person wanted under a warrant. If a warrant has issued for the arrest of an individual and the individual *actually* wanted under that warrant is arrested, the arresting officer has fulfilled his duty, and he will not

be liable for false arrest or false imprisonment merely because the person arrested is later found to be innocent of the charges against him. *Perry v. Jones, supra.* We are saying that the sheriff or arresting officer has a duty to exercise due diligence in making sure that the person arrested and detained is actually the person sought under the warrant and not merely someone of the same or a similar name. *See* Restatement (2d) Torts § 125, comment (d) (1965).

REVERSED AND REMANDED.

---

4. Since the sheriff did not take office until after the warrant had issued in the name of "Linnie C. McCollan," he cannot be held responsible for any conduct by the sheriff's department prior to that time.