**Norman CYPRUS**

v.

**Richard DISKIN, Steven Furlong, and Glenn Walp.**

**Civ. A. No. 95–1573.**

United States District Court, E.D. Pennsylvania.

June 27, 1996.

Fergus B. Norton, Rosemont, PA, for plaintiff.

Denise A. Kuhn, Office of Attorney General, Philadelphia, PA, for defendants.

## OPINION

LOUIS H. POLLAK, District Judge.

This case arises under 42 U.S.C. § 1983. The plaintiff, Norman Cyprus, asserts that his constitutional rights were violated as a result of an arrest that assertedly occurred without probable cause. He has named as defendants two state police officers, Trooper Richard Diskin and Corporal Steven Furlong, and the Commissioner of the Pennsylvania State Police, Glenn Walp. The defendants have now filed a motion for summary judgment.

### I. Factual Background

The following recitation of undisputed facts is derived from the complaint and from the parties' submissions.

Norman Cyprus is an antique gun dealer. On November 12, 1994, at an antique gun show in Lower Pottsgrove Township, Pennsylvania, Trooper Richard Diskin purchased two guns from Cyprus, an 8mm French revolver and an Iver Johnson .38 caliber revolver, and ammunition for the French revolver. The total purchase price was $295.00. Diskin is an officer in a unit of the Pennsylvania State Police that specializes in fraud investigations; an element of this unit's work is the detection of crimes related to sales of weapons. Diskin had been told by an informant that illegal sales of weapons were occurring at gun shows in eastern Pennsylvania, and his November 1994 purchase from Cyprus was part of an investigation of this informant's claim.

On December 8, 1994, Diskin applied for and received a warrant for Cyprus's arrest. The warrant charged Cyprus with two counts of violating 18 Pa.C.S.A. § 6111(a), which imposes a 48-hour waiting period between sale of a firearm and delivery, and two counts of violating 18 Pa.C.S.A. § 6111(b), which imposes certain reporting requirements on firearm sales. No waiting period had been imposed on the sale to Diskin, and none of the reporting required by § 6111(b) had occurred.

On December 10, 1994, at an antique gun show in Allentown, Cyprus and another exhibitor were paged to report to the office of the gun show manager. At that office, they were met by an Allentown police officer, who escorted the two exhibitors to the lobby of the exhibition hall. Corporal Steven Furlong met the two in the lobby and arrested them. Cyprus was then escorted to his exhibitor's table, and the table was covered with sheets; he and his police escort then returned to the lobby. When state police transportation arrived, Cyprus was handcuffed and taken to the Bethlehem barracks of the Pennsylvania State Police. There, he was fingerprinted and photographed, and was served with the arrest warrant. Shortly afterwards, Cyprus was taken to a bail hearing, at which he was released on his own recognizance (after a total of approximately four hours in police custody).

On January 24, 1995, at a preliminary hearing before District Justice Catherine M. Hummel, Cyprus presented evidence—in the form of two books, Iver Johnson Arms & Cycle Works Handguns 1871–1978, and Military Handguns of France 1858–1958—that the guns that he had sold to Diskin had been manufactured in or before 1898.[1] As I will discuss shortly, Pennsylvania's firearms laws exempt antique firearms, a category that includes firearms manufactured before 1899. Presumably for this reason, District Justice Hummel then dismissed all charges against Cyprus for lack of probable cause.

On March 17, 1995, Cyprus filed this suit. Cyprus's complaint asserts that his arrest was performed in bad faith and "in total disregard" of Pennsylvania's gun laws and of Cyprus's constitutional rights—specifically, of the Fourth Amendment's prohibition on unreasonable searches and seizures (as incorporated by the Fourteenth Amendment), of the Sixth Amendment, and of the due process and equal protection clauses of the Fourteenth Amendment. Complaint, ¶¶ 12, 14, 19. Cyprus's complaint avers that many gun dealers have been arrested in this fashion, and that these arrests have occurred at the direction of Glenn Walp, Commissioner of the Pennsylvania State Police. As damages, Cyprus seeks reimbursement of the attorneys' fees he incurred as a result of his arrest; compensation for the harm his public arrest at the Allentown show did to his business relationships with persons attending that show; compensation for the "great embarrassment, shame and humiliation," Complaint at ¶ 18, and harm to his reputation resulting from that arrest; and an award of punitive damages.

The defendants' motion for summary judgment asserts: (1) that Cyprus has no viable claim against Walp, who was not personally involved in any of the events giving rise to Cyprus's claims; (2) that Cyprus may only bring a claim under the Fourth Amendment, not under the other constitutional provisions he cites; and (3) that the defendants have qualified immunity for their conduct in arresting Cyprus and declining to drop the charges against him.

II. Personal Involvement of Defendant Walp

In order to maintain a section 1983 claim against Walp, Cyprus must establish that Walp was personally involved in the wrongs that were allegedly done to him or knowingly acquiesced in those wrongs. See *Gay v. Petsock*, 917 F.2d 768, 771 (3d Cir.1990). Cyprus has established that Walp had received general reports of Diskin's investigation (which involved a number of gun dealers other than Cyprus) and that he was aware that some gun-related arrests were to occur.

---

1. Some time before this hearing occurred, Cyprus's attorney apparently telephoned Furlong, told him that he could prove that the two guns at issue had been manufactured in or before 1898, and suggested that the charges against Cyprus be dropped. Furlong declined to do so.

See Plaintiff's Exh. 22. Commissioner Walp also apparently held a press conference on December 15, 1994, to discuss a number of gun-related arrests that had occurred on December 14 and 15; Cyprus's arrest occurred on December 14. Walp states, in an affidavit, that he has never met Cyprus, that he had not directed any Pennsylvania police officer to take any actions against him, and that he had little awareness of the details of Diskin's investigation. See Defendant's Exh. X at 2–3.

■ Cyprus theorizes that Walp, frustrated by the defeat in the Pennsylvania legislature of gun-control legislation he supported, undertook a wave of gun-related arrests as a form of "revenge." Cyprus advances no proof for this proposition, however, and also provides no evidence that Walp had any personal knowledge of, or acquiesced in, the alleged infirmities in either Cyprus's arrest or the arrests of gun dealers generally. Cyprus cannot therefore maintain a section 1983 claim against Walp. Thus, this element of the defendants' summary judgment motion will be granted.

III. The Legal Basis of Cyprus's Claims

Cyprus's complaint makes claims based upon (1) the Fourth Amendment's prohibition on unreasonable searches and seizures, (2) the Sixth Amendment, and (3) the due process and equal protection clauses of the Fourteenth Amendment.[2] The defendants argue that, of these various legal theories, only the Fourth Amendment claim is viable.

A. Sixth Amendment

Cyprus has never identified which provision of the Sixth Amendment was violated as a result of the events recounted in his complaint, and there is no clear relationship between the facts alleged in that complaint and the Sixth Amendment, which relates to rights at criminal trials. Accordingly, I will grant the defendants' motion as to Cyprus's Sixth Amendment claims.

B. Due Process

Cyprus provides somewhat more detail about the basis of his due process claims. His complaint cites generally to the Fourteenth Amendment's due process clause; in his response to the defendants' summary judgment motion, he appears to indicate that this reference is intended to refer to both the substantive and the procedural components of that clause. Response at 11.

1. Substantive Due Process

■ Cyprus's substantive due process claim is squarely foreclosed by a recent Supreme Court case, *Albright v. Oliver*, 510 U.S. 266, 271–75, 114 S.Ct. 807, 812–13, 127 L.Ed.2d 114 (1994). In that case, the Court rejected the claim that an arrest performed without probable cause could be actionable as a violation of substantive due process. The Court observed that "the Court has always been reluctant to expand the concept of substantive due process because ... guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Albright*, 510 U.S. at 271–72, 114 S.Ct. at 812 (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 124, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992)). Thus, "[w]here a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright*, 510 U.S. at 273, 114 S.Ct. at 813 (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989)) (internal quotation omitted). The Court therefore found that a claim for arrest without probable cause was governed, not by substantive due process, but by the Fourth Amendment's provisions as to pretrial deprivations of liberty, which had been specifically intended to address the problems associated with pretrial deprivations of liberty. See *Albright*, 510 U.S. at 273, 114 S.Ct. at 813. Justice Ginsburg, writing in concurrence, ex-

---

2. Cyprus's brief responding to the defendants' summary judgment motion also asserts that the defendants' conduct violated his First Amendment right of freedom of association, as it inter-

fered with his ability to associate with fellow gun dealers. This legal theory does not appear in Cyprus's complaint; thus, I will not discuss it further.

plained that an arrest without probable cause would be governed by the Fourth Amendment's prohibition on "unreasonable ... seizures." *Albright,* 510 U.S. at 277–78, 114 S.Ct. at 815 (Ginsburg, J., concurring).[3]

### 2. *Procedural Due Process*

■ The Albright plurality specifically noted that the petitioner in that case had not asserted a procedural due process claim. See *Albright,* 510 U.S. at 271–73, 114 S.Ct. at 812 (noting that the petitioner had not made a procedural due process claim). Thus, Albright does not affect the availability of those claims. See, e.g., *Whiting v. Traylor,* 85 F.3d 581, 584 n. 3 (11th Cir.1996); *Perez–Ruiz v. Crespo–Guillen,* 25 F.3d 40, 42–43 (1st Cir.1994). As the *Perez–Ruiz* court observed, however, "the availability of an adequate remedy for malicious prosecution under [state] law" can bar a procedural due process claim. Id. at 43. The defendants have not raised this argument, which flows from the holding of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), that a state actor's random and unauthorized deprivation of a liberty or property interest cannot be challenged under section 1983 so long as the state provides an adequate post-deprivation remedy. Because Cyprus has not had an opportunity to address *Parratt,* and because its rule is not without exceptions, I will, for the present, allow his procedural due process claim to stand.

### C. Equal Protection

■ Cyprus's equal protection claim is also not foreclosed by *Albright.* The Court has long acknowledged that the equal protection clause is available to redress such evils as selective enforcement. See *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501, 505–06, 7 L.Ed.2d 446 (1962). Oyler stated that, to prevail on such a claim, a plaintiff must establish that the selection of persons as targets for enforcement "was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification." *Id.*[4] The Court has recently reaffirmed this element of Oyler. See *U.S. v. Armstrong,* —— U.S. ——, ——, 116 S.Ct. 1480, 1486, 134 L.Ed.2d 687 (1996).[5]

Equal protection claims of this type are most often raised as defenses to a criminal prosecution, see, e.g., *Government of Virgin*

---

**3.** Justice Ginsburg also observed, quite persuasively, that the prohibition on "unreasonable seizures" would apply even to events occurring after an arrestee was released on bail, because, at common law, a person released on bail was conceived of as still being in custody. See *id.* This included, in Justice Ginsburg's view, events occurring at a preliminary hearing.

Although no other member of the Court formally joined Justice Ginsburg's opinion, three other Justices appeared to agree with her reading of the Fourth Amendment. These were Justice Souter, who wrote in concurrence, see *Albright,* 510 U.S. at 290–91, 114 S.Ct. at 822 (Souter, J., concurring), Justice Stevens, who wrote in dissent, see *Albright,* 510 U.S. at 306–07, 114 S.Ct. at 830, and Justice Blackmun, who joined Justice Stevens' opinion. Nor did any of the other Justices express any disagreement with Justice Ginsburg's views. Chief Justice Rehnquist, who wrote the plurality opinion, appeared to view the task presented by Albright sufficiently narrowly that he had no occasion to address the issues Justice Ginsburg raised. See *Albright,* 510 U.S. at 275, 114 S.Ct. at 813 ("We express no view as to whether petitioner's claim would succeed under the Fourth Amendment, since he has not presented that question in his petition for certiorari") (opinion of Rehnquist, C.J.). Justice Scalia, who joined Justice Rehnquist's plurality opinion, also wrote a brief concurring opinion on subjects that did not touch on those raised by Justice Ginsburg. Finally, Justice Kennedy, who wrote an opinion concurring in the judgment that was joined by Justice Thomas, followed a line of reasoning (which focused on the availability of state tort laws as a remedy) under which he had no occasion to consider the issues raised by Justice Ginsburg. See *Albright,* 510 U.S. at 283–86, 114 S.Ct. at 818–19.

**4.** Although Oyler involved selective prosecution, rather than selective arrest, its holding has been applied to both categories of enforcement. See, e.g., *Butler v. Cooper,* 554 F.2d 645, 646 (4th Cir.1977) (finding that Oyler governs a claim of selective arrest).

**5.** Armstrong emphasized that a party who seeks to overcome the presumption that a prosecutor's decisions were not motivated by improper considerations must present "clear evidence to the contrary," id. (further citations omitted), and noted the deference that is usually accorded to prosecutorial decisions, see id. at 1486–87. This aspect of Armstrong may well not apply to police officers, whose arrest decisions are not ordinarily accorded the same deference as are the enforcement decisions of a public prosecutor.

*Islands v. Harrigan,* 791 F.2d 34, 35 (3rd Cir.1986), or, as on Oyler, in the context of a habeas corpus proceeding. It would also seem possible to raise such claims in a civil suit against an arresting or prosecuting officer. See, e.g., *Blount v. Smith,* 440 F.Supp. 528, 531 (M.D.Pa.1977) (considering, and rejecting, such a claim).

Cyprus avers that he was arrested solely because he was a dealer in antique firearms. This status is not (at least thus far) a member of the small group of classifications which are, from an equal protection perspective, "suspect." However, Cyprus may nevertheless be able to frame his claim as one under the equal protection clause. Oyler suggested that the equal protection clause barred selecting persons for prosecution on the basis of "other arbitrary classification[s]." If Cyprus can establish that the defendants had no rational basis whatsoever for selecting dealers in antique guns as a target of their law enforcement efforts—and especially if he can establish that the selection was motivated by animus, rather than by a colorably rational weighing of the public's law-enforcement interests—it is possible that his claim may succeed. Cf. *Romer v. Evans,* — U.S. —, — – —, 116 S.Ct. 1620, 1627–29, 134 L.Ed.2d 855 (1996) (finding that a law that does not burden a fundamental right and does not target a suspect class may nevertheless violate the equal protection clause if that law does not "bear[ ] a rational relation to a legitimate end," and treating evidence of animus as suggesting the lack of a legitimate governmental interest). Cyprus's equal protection claim may or may not be able to meet this standard; that question is, however, not now before this court.

### D. Fourth Amendment

Finally, the defendants concede that the Fourth Amendment is available as a basis for Cyprus's claims. In discussing a claim based on an allegedly groundless arrest, the Third Circuit has said that "recovery under [a] Fourth Amendment seizure claim always requires proof that the defendant did not believe in the plaintiff's guilt or recklessly disregarded the truth." *Lippay v. Christos,* 996 F.2d 1490, 1502 (3rd Cir.1993).

In conclusion, then, I will grant the defendants' summary judgment motion as to Cyprus's Sixth Amendment claim and his Fourteenth Amendment substantive due process claim, and deny their motion as to his Fourth Amendment claim and his Fourteenth Amendment equal protection and procedural due process claims.

### IV. Qualified Immunity

The defendants assert that they have qualified immunity for their acts in arresting Cyprus. A state official is immune to damage claims brought under 42 U.S.C. § 1983 if a reasonable official in his position could have believed that his action or decision was lawful, in light of clearly established law and the information he possessed at the time he acted. See *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S.Ct. 534, 536, 116 L.Ed.2d 589 (1991). Defendants Diskin and Furlong assert that, at the time of Cyprus's arrest, they read the Pennsylvania statute defining "antique firearms" in such a way that even a pre–1899 firearm was not an "antique" if it used ammunition that was readily available in the United States. Because this appears to have been true of the firearms sold by Cyprus (one of which, indeed, was sold with ammunition), their reading of the statute, if reasonable, would render Cyprus's arrest appropriate.

The relevant statute, 18 Pa.C.S.A. § 6118, provides:

(a) General rule. This subchapter shall not apply to antique firearms....

(c) Definition. For purpose of this section "antique firearm" means:

(1) any firearm, including any firearm with a matchlock, flintlock, percussion cap or similar type of ignition system, manufactured on or before 1898; and

(2) any replica of any firearm described in paragraph (1) if such replica:

(i) is not designed or redesigned for using rim fire or conventional center fire fixed ammunition; or

(ii) uses rim fire or conventional center fire fixed ammunition which is no longer manufactured in the United States and which

is not readily available in the ordinary channels of commercial trade.

18 Pa.C.S.A. § 6118. Diskin states in an affidavit that, as he reads this statute,

I believe that the use of the word 'and' between subsections (c)(1) and (c)(2) means that sub-subsections (i) and (ii) also apply to (c)(1). Also, it does not make sense that sub-subsections (i) and (ii) would apply only to 'replicas' of guns manufactured prior to 1899 and not to actual guns manufactured prior to 1899. Why would the legislature be concerned about the type of ammunition used in a replica of an old gun but not in the old guns themselves?

Defendants' Exh. VIII at 7–8. An affidavit signed by Trooper Furlong contains the same observations. See Defendants' Exh. IX at 6–7.

█ As a matter of statutory interpretation, the reading advanced by Diskin and Furlong is patently incorrect. Sub-subsections (i) and (ii) clearly apply only to "replicas," and no reasonable police officer who read the statute closely would think otherwise. Diskin and Furlong appear to believe that the legislature's decision to draft the statute in this manner reflects a curious ordering of priorities. It is true that legislatures work in mysterious ways. However, it cannot be denied that, as drafted, section 6118 clearly exempts all guns manufactured before 1899 from the subchapter in which it appears, and therefore from 18 Pa.C.S.A. § 6111, the statute that formed the basis of Cyprus's arrest warrant.

Diskin and Furlong also argue that the information known to them at the time of Cyprus's arrest rendered it reasonable for them to believe that the weapons Cyprus sold to Diskin were not antique firearms.[6] Diskin notes that he had information indicating that guns were being sold illegally at events like the one at which he conducted his transaction with Cyprus. He also points out that no date of manufacture appeared on the guns, and asserts that the guns appeared, on visual inspection, to have been manufactured after 1898. See Defendants' Exh. VIII at 7.

The defendants' explanation is unpersuasive. Although Diskin might have reasonably believed that some guns were being sold illegally at gun shows, there is no indication that he could have reasonably believed that a substantial fraction of transactions at those shows were tainted. Moreover, the guns were bought at an antique gun show, which should have led Diskin and Furlong to at least consider the applicability of section 6118.[7] Moreover, an examination of photographs of the guns in question submitted by the defendants indicates that, although (in the eyes of this (concededly unexpert) beholder) they are not indisputably antiques— i.e., they are not flintlocks—they are also not indisputably of modern manufacture.[8] See Defendants' Exh. VIII–B. There seem to have been no other indicia that the gun transaction at issue was a suspicious one. In such a situation, I find that no reasonable police officer would make an arrest without at least some investigation into the accuracy of the claim that the guns in question were antiques.[9] Thus, the defendants' claim of qualified immunity will be denied.

6. Cyprus does not dispute that, if the weapons he sold to Diskin had not been antiques, they would have been "firearms" for purposes of § 6111.. See 18 Pa.C.S.A. § 6102 (defining a "firearm").

7. Cyprus has submitted an affidavit from the president of the Pennsylvania Antique Gun Collectors Association which states that a sign at the entrance to the Pottsgrove show indicated that no guns manufactured after 1898 could be sold at the premises. See Declaration of Robert A. Sadler, doc. no. 14. There is no indication, however, that the defendants saw or should have seen the sign, which was about ten by twelve inches in size.

8. This is particularly true of one of the guns, whose handle seems to be made of mother-of-pearl, bone, or some other natural material. It seems plain that I, as a rank amateur in the gun-world am not especially well-situated to determine, on the basis of a photograph of a gun, whether a reasonable police officer could conclude, on the basis of an actual visual inspection of the gun, whether the gun was likely to be of post–1898 manufacture. At a later stage of these proceedings, the defendants may be able to adduce additional evidence as to what a reasonable police officer would have concluded upon examining the guns.

9. This is particularly true because a full month intervened between the gun purchase and the arrest, and because the police appear to have had a firearms laboratory available to them

## V. Viability of Cyprus's Remaining Claims

As to each of Cyprus's remaining claims—his Fourth Amendment claim, his procedural due process claim, and his equal protection claim—there is a possibly significant barrier to recovery on the merits. As to the Fourth Amendment claim, the potential barrier is the requirement that Cyprus establish that Diskin and Furlong "did not believe in [his] guilt or recklessly disregarded the truth." *Lippay v. Christos,* 996 F.2d 1490, 1502 (3rd Cir.1993). As to the procedural due process claim, the potential barrier is *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), which may require that Cyprus have vainly invoked state-law malicious-prosecution remedies before suing under section 1983. And as to the equal protection claim, the potential barrier is the requirement that a plaintiff demonstrate that the defendants acted on the basis of a classification that was devoid of any rational basis.

The court has the power to consider the entry of summary judgment sua sponte. See Charles A. Wright, Arthur R. Miller & Mary Kay Kane 10A Federal Practice and Procedure § 2720 at 27 (1983). In the present case, it would appear to be appropriate for the court to raise the question whether Cyprus can overcome any (or all) of the foregoing three difficulties. I will therefore order that the parties brief these questions. I will then endeavor to rule on them quickly, so that, if this case is to proceed to trial, it may do so without delay.

An appropriate order follows.

### ORDER

For the reasons set forth in the accompanying opinion, it is hereby ORDERED that the defendants' motion for summary judgment (doc. no. 8) is GRANTED in part and DENIED in part.

1. All claims against defendant Walp are hereby dismissed.

which could presumably have assisted in dating the weapons. (The record includes a laboratory analysis of the firearms, dated after Cyprus's arrest, which provides, inter alia, model numbers for the weapons and a functionality analysis. See Defendants' Exhibit VIII–A.)

2. Cyprus's Sixth Amendment claim and Fourteenth Amendment substantive due process claim are hereby dismissed.

3. The parties are hereby ORDERED to submit supplemental briefs addressing the subjects outlined in the concluding section of the accompanying opinion.

There is a further question, which I will not now reach, whether a reasonable officer in Furlong's position would have investigated the guns' status as antiques after his conversation with Cyprus's attorney.