**TENNECO OIL COMPANY, Appellant,**

v.

**PADRE DRILLING COMPANY, Inc.,**
**Appellee.**

**No. 4801.**

Court of Civil Appeals of Texas.

Waco.

Sept. 11, 1969.

Rehearing Denied Oct. 9, 1969.

Keys, Russell, Watson & Seaman, Corpus Christi, R. A. Taylor, Jr., Crystal City, for appellant.

Kleberg, Mobley, Lockett & Weil, Corpus Christi, G. Curtis Jackson, Crystal City, for appellee.

## OPINION

McDONALD, Chief Justice.

This is an appeal by Tenneco from a judgment against it, in favor of Padre for $71,519.36 (with interest from May 16, 1966), plus $20,000 attorney's fees.

Padre sued Tenneco, 1) under a written contract under which Tenneco employed Padre to drill an oil and gas well for Tenneco in Zavala County, 2) on quantum meruit and sworn account, 3) for breach by Tenneco of the contract, and 4) foreclosure of mechanics and materialman's lien against the oil and gas lease of Tenneco.

Tenneco cross acted, alleging breach of the contract by Padre.

Trial to a jury resulted in verdict for Padre. The trial court entered judgment for Padre on such verdict for $71,519.36, attorneys fees, and foreclosure of lien on the oil and gas lease of Tenneco.

Tenneco appeals on 21 points contending the trial court erred in entering judgment for Padre because:

1) As a matter of law Padre failed to perform its contract by drilling to 6650 feet or the first coring point.

2) Padre's obligation to drill to required depth was not excused by Tenneco electing to a) suspend drilling, b) abandon the well, or c) to drill to a lesser depth.

3) Padre's obligation to drill to required depth was not excused by heaving shale, as there was nothing abnormally difficult or hazardous in the drilling of the well.

4) Padre's obligation to drill to required depth was not excused by heaving shale, as there was no sticking of the drill pipe or similar difficulty, which precluded drilling ahead under reasonably normal procedures.

5) There is no evidence or insufficient evidence to support Issues 2, 3, 5–10, 12, 14–19, 21–24, 26 and 32, and answers to such are against the overwhelming preponderance of the evidence.

6) Answers to Issues 33–38 are against the overwhelming preponderance of the evidence.

7) The court erred in submitting issues 14–18 on quantum meruit because Padre must recover or fall on the provisions of the written contract.

8) The trial court erred in awarding Padre attorneys fees.

9) The trial court erred in not entering judgment that Padre take nothing, and in not entering judgment for Tenneco on its cross action.

The contract provides Padre should drill a well for Tenneco "to a depth of 6650 feet or first coring point", unless Tenneco "elects to have supervision of the well turned over to it, drilling suspended, well abandoned, or drilled to a lesser depth." Section 3.2(b) provided in part: *"In the event * * heaving shale, or other similar formation is encountered* which makes drilling abnormally difficult or hazardous, as determined by a (Tenneco) representative, causes sticking of drillpipe or casing, or other similar difficulty, which precludes drilling ahead under reasonably normal procedure, (Padre) shall in all such cases, without delay, exert every reasonable effort to overcome such difficulty, and immediately notify (Tenneco). When such condition is encountered (Tenneco) shall assume risk of loss or damage to the hole and to (Padre's) equipment in the hole. Should such * * conditions persist in spite of (Padre's) efforts to overcome them, then after a period of 24 hours time consumed in such efforts, further operations shall be conducted on a day work basis at the applicable rate hereinafter fixed, until such conditions have been overcome and normal drilling operation can be resumed."

"that (Tenneco) furnish" "14. Fishing tools and services", "20. Mud, chemicals * *", and "24. Depreciated value of uninsured subsurface equipment of contractor lost in hole-day work".

Section 8 provides payment to Padre "(a) $6.35 per linear foot of depth actually drilled,

"(b) For day work $925. for 24 hour day when using contractor's drill pipe and machinery;

"(c) For day work $835. per 24 hour day when using contractor's machinery, but not using contractor's drill pipe".

Padre commenced to drill the well pursuant to such contract on April 19, 1966, and almost immediately ran into heaving shale. On April 29 the drill pipe parted at 2988 feet depth. Thereafter efforts were made to fish the drill pipe out of the hole, and on May 11, the drill pipe parted at 3000 feet depth. On May 13, 1966 Tenneco instructed Padre to get the rig off the lease.

Padre contended that heaving shale was encountered which made drilling abnormally difficult or hazardous and caused a sticking of the drill pipe or casing and that such was the cause of the drill pipe parting at the 2988 and 3000 foot depth. Tenneco contended the parting of the drill pipe was caused by defective or weak drill pipe.

There is a substantial evidence testified to by a number of witnesses (both expert and non expert) in support of both contentions.

The trial court submitted the case on both of Padre's theories, viz contract and quantum meruit, and submitted Tenneco's defensive theory of pipe weakness or defect.

The jury in answer to issues submitted found:

1) Padre encountered heaving shale or other similar formation.

2) Such heaving shale or other similar formation made drilling abnormally difficult or hazardous;

3) A representative of Tenneco determined that Padre had encountered heaving shale or other similar formation.

5) Padre encountered heaving shale or other similar difficulty at 3000 feet depth, on

6) April 24, 1966;

7) Such heaving shale or other similar formation caused sticking of drill pipe or similar difficulty;

8) The heaving shale or other similar formation caused sticking of drill pipe or similar difficulty at 3000 feet depth, on

9) April 24, 1966;

10) Such sticking of drill pipe or similar difficulty precluded drilling ahead under reasonably normal procedures;

11) Padre without delay exerted every reasonable effort to overcome such conditions;

12) Padre immediately notified Tenneco of such conditions;

13) Such conditions persisted in spite of the efforts of Padre to overcome them.

14) Tenneco requested Padre to drill the well;

15) Padre drilled the well at the request of Tenneco;

16) Padre furnished materials, equipment and labor and drilled the well in a good and workmanlike manner.

17) Tenneco had knowledge that Padre was furnishing material and equipment and performing labor in drilling the well.

18) $81,941.63 was a fair and reasonable charge for drilling the well.

19) On May 8, 1966 Tenneco failed to furnish mud for use of Padre in the well.

20) Mud was necessary for the operations being performed by Padre.

21) Tenneco elected to have drilling suspended by Padre.

22) At 3000 feet depth.

23) Tenneco elected to have the well drilled to a depth less than 6650 feet, to-wit:

24) 3000 feet depth.

25) Tenneco elected to have the well abandoned at:

26) 3000 feet depth.

27) On May 13, 1966.

28) Padre lost equipment in the well, which had a value of:

29) $29,361.36.

30) The reasonable value of fishing tools and services furnished in the fishing operations was $14,000.

31) Reasonable attorneys fees for Padre was $20,000.

32) Tenneco did not advise Padre on May 13, 1966 that it would take over supervision of the operations.

33) The drill pipe failure on April 29, 1966 was not the result of defect or weakness in the drill pipe.

34) Drilling of the well was not unreasonably delayed before May 13, 1966.

35) The drill pipe failure of May 11, 1966 was not the result of a compression force on the drill stem due to the bit hitting a bridge or other obstruction in the well core.

37) The reasonable value of materials and services supplied by Tenneco to the well was *"none"*.

38) Reasonable attorneys fees for Tenneco was "None".

The trial court entered judgment for Padre on such verdict for $71,519.36 being the total of $19,050. (3000 feet drilled at $6.35 per foot; $16,650 (18 days work at $925. per day); $1,458 being 40 hours work at $875. per day); $20,361.36 (depreciated

value of equipment of Padre lost in the well); $14,000. (for fishing tools and services furnished by Padre); plus $20,000. attorneys fees.

 The judgment was thus entered on plaintiff's suit on the contract. We think the evidence ample to support the jury's answers to the applicable issues. Tenneco's contentions 1 through 6 and 9 are overruled. See Trice Production Co. v. Dutton Drilling Co., Tex.Civ.App. (n. r. e.) 333 S.W.2d 607. Under this view contention 7 becomes immaterial.

Tenneco's contention 8 is that the trial court erred in awarding Padre attorney's fees. The judgment is predicated on Padre's suit on the contract. Such contract does not provide for attorneys fees.

 Unless provided by statute or by contract of the parties, attorneys fees incurred by a party to litigation are not recoverable against the adversary either in an action in tort or a suit upon contract. Wm. Cameron & Co. v. American Surety Co., Tex.Sup.Ct., 55 S.W.2d 1032.

 Article 2226 Vernon's Ann.Tex.St. provides for attorneys fees in suits for *labor done.* The contract between the parties provided Padre was to furnish "all labor" and the evidence reflects such was done.

Delhi Pipeline Corporation v. Lewis, Inc., Tex.Civ.App. (NWH) 408 S.W.2d 295, is a case in which Lewis, Inc. contracted to construct a pipeline for Delhi. The contract provided that Lewis would furnish labor and materials in performance of the contract. Delhi did not pay and Lewis recovered judgment which included attorneys fees. The court held: "Contracts for labor done and materials are clearly within the provisions of Art. 2226 V.A.C.S., and a corporation may recover reasonable attorney's fees in connection with those items." Contention 8 is overruled.

All of Tenneco's points and contentions have been considered and none present reversible error.

The judgment is correct.

Affirmed.