**MATADOR DRILLING COMPANY, INC., Plaintiff-Appellee,**

v.

**George P. POST, d/b/a Post Petroleum Company, Defendant-Appellant.**

No. 80–2191.

United States Court of Appeals, Fifth Circuit.

Dec. 7, 1981.

Coke & Coke, George R. Poehner, Dallas, Tex., for defendant-appellant.

Shank, Irwin, Conant, Williamson & Grevelle, A. B. Conant, Jr., Dallas, Tex., for plaintiff-appellee.

Before AINSWORTH, INGRAHAM and TATE, Circuit Judges.

INGRAHAM, Circuit Judge:

Appellee Matador Drilling Company, Inc. ("Matador") brought this diversity action[1] against appellant George P. Post, doing business as Post Petroleum Company ("Post"), seeking recovery of $189,001.58, which it alleged to be the balance due on a contract to drill a well in search of oil or gas on a daywork basis. Post denied any contractual liability and, in addition, brought a counterclaim for damages allegedly resulting from defects in Matador's performance. In response to special interrogatories the jury found that Matador had not fully performed its obligations under the contract, but that it had substantially performed, and that $176,350.85 was due to Matador. The district court then entered judgment on the verdict, plus attorney's fees, and denied Post's motion for judgment notwithstanding the verdict or new trial. Although we hold that the jury's finding that Matador substantially performed the drilling contract is supported by sufficient evidence and must be affirmed, it is apparent that the verdict is in excess of the maximum amounts properly recoverable under the contract. Because the excess is readily determinable, we remand for entry of a remittitur of $10,849.27.

## I. Background

The following chronology is essentially undisputed. Post, as Operator, and Matador, as Contractor, entered into a daywork drilling contract dated August 24, 1977, under which Matador was to furnish the equipment and labor to drill a well, the Newberry No. 1, in Jackson County, Oklahoma. The well was to be drilled to a depth of 9000 feet, or to the Arbuckle formation, whichever was deeper, but in no event deeper than 9300 feet. The contract specified various payment rates for mobilization, operating days and standby time, and also contained repair rate and force majeure clauses.

Drilling commenced on September 6, 1977, and continued until September 20, when the drill pipe became stuck in the hole at a depth of approximately 5200 feet. Although Matador had reported during this period that the drilling was deviating from vertical by less than 1°, a subsequent survey using more sophisticated equipment indicated that by the time the drilling had reached approximately 4800 feet the hole deviated from vertical by over 21°. In the course of Matador's initial attempts to free the stuck drill pipe on September 20, the top section of the derrick on Matador's drilling rig was damaged. The derrick had to be removed from the site for repair and was not returned until October 15. During the period September 20 to October 15 no drilling took place and Post maintained a circulation of drilling fluid, "mud," to preserve the hole.

When the derrick was returned, "fishing operations" were conducted from October 15 to October 28 in an attempt to retrieve the drill pipe and equipment lodged in the hole. Post retained additional help for these operations. It was during fishing operations that a question arose as to the true deviation of the drilling and a Sperry-Sun Directional Survey, performed on or about October 27, revealed dramatic deviation. The rig was shut down from October 29 until November 1 while the parties negotiated the proper course of action. On November 4 a cement plug was put in the hole at approximately 3500 feet. The remaining upper portion of the hole was straightened and drilling resumed until the well reached contract depth on January 1, 1978. The well was subsequently plugged as a dry hole; that is, a non-producing well.

Matador's complaint alleged that Post had paid the appropriate daywork rates for operations from November 2 until December 14, but the following sums remained outstanding:

1. Matador is a Texas corporation. Appellant Post is a citizen and resident of Oklahoma. Both parties have asserted that the applicable substantive state law for purposes of *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), is the law of Texas and this choice has not been drawn into question on appeal.

1. September 6 – September 20; 14 days at operating day rate of $3,450 per day ... $ 48,300.00
2. September 21 – October 15; 23½ days at force majeure rate of $1000 per day ... 23,500.00
3. October 15 – October 28; 13 days at operating day rate ... 44,850.00
4. October 29 – November 1; 4 days at standby rate of $3000 per day ... 12,000.00
5. December 27 – January 1; 4.8125 days at operating day rate ... 16,387.50

Matador also sought reimbursement for drill bits furnished at the request of Post, and for eleven drill collars lost in the hole. The contract expressly provides that Post must reimburse Matador for the value of any in-hole equipment, including drill collars, that are lost or damaged. Plaintiff's Exhibit No. 138, "Final bill for subject well," was an invoice reflecting all of these items of recovery.

At trial, Matador acknowledged that the drilling operations had encountered serious problems but insisted that no fault could be attributed to the drilling company. Several of Matador's employees testified generally that the drilling was conducted according to customary industry procedures, in a good and workmanlike manner. In particular, evidence was introduced to show that Matador tested for deviation on three occasions between September 6 and September 20, using a "Totco" device and that the results of the tests, indicating minimal deviation, were accurately reported to Post. Matador blames the actual deviation on geological conditions. Notwithstanding any such conditions, there was no explanation why the Totco tests failed to accurately detect the deviation that was subsequently identified by the Sperry-Sun survey.

Post's position, asserted throughout the trial and on this appeal, is that Matador breached its express contractual obligations to perform with due diligence and care and in a good and workmanlike manner, to provide competent supervision, and to keep and furnish to Post an accurate record of the

work performed. In his case in chief Post introduced extensive evidence of the additional costs incurred that Post attributed to Matador's defective performance; for example, amounts paid to third parties in connection with the fishing operations and the cost of maintaining drilling mud throughout the drilling.

The case was submitted to the jury in three sets of interrogatories. First, the jury was asked whether Matador had fully performed its obligations under the day-work contract. The jury answered that Matador did not fully perform, and accordingly did not address question 2 dealing with the recovery, if any, for full performance. Question 3, whether Matador had substantially performed, was answered in the affirmative, and under question 4 the jury awarded $176,350.85 as the balance due Matador. Post's counterclaim, contained in questions 5 and 6, was to be addressed only if the jury found neither full nor substantial performance; accordingly the jury did not reach questions 5 and 6.

II. Discussion

Post raises the following issues on appeal: (1) whether Matador failed to meet its burden under Texas law of providing evidence of the proper measure of damages for recovery under the theory of substantial performance; (2) whether Post's motion for a directed verdict on the issue of substantial performance should have been granted; (3) whether Post's motion for new trial should have been granted on the ground that the verdict was excessive as a matter of law; and (4) whether Matador's daily drilling records, or "Tower reports," were admissible under the business records exception to the hearsay rule.

A. Burden of Proof [2]

 Under Texas law, and the law of most jurisdictions, a party may bring suit

---

**2.** At the outset, Matador argues that Post has not properly preserved this issue for appeal because the issue was not raised in Post's motion for a directed verdict, citing *House of Koscot Development Corp. v. American Line Cos-*

*metics, Inc.,* 468 F.2d 64–68 (5th Cir. 1972). Post points out, however, that his motion for directed verdict at the close of evidence did include the ground of "failure of proof that damages are due," and also that the relevant

on a contract and recover even if his performance is less than literal and complete so long as performance has been "substantial." *Atkinson v. Jackson Bros.*, 270 S.W. 848, 851 (Tex.Comm.App.1925, holding approved); *Dietz Memorial Co. v. Texas Steel Building Co.*, 578 S.W.2d 872, 874 (Tex.Civ.App.-Waco 1979, writ ref'd n.r.e.); *Perryman v. Sims*, 506 S.W.2d 753, 754–56 (Tex.Civ.App.-Tyler 1974, writ ref'd n.r.e.). Substantial performance means performance of the essential elements of a contract, provided that the defects in performance do not prevent the parties from accomplishing the purpose of the contract. *Atkinson, supra; Triton Oil & Gas Corp. v. E. W. Moran Drilling Co.*, 509 S.W.2d 678, 682 (Tex.Civ.App.-Ft. Worth 1974, writ ref'd n.r.e.). Recovery for substantial performance is the contract price reduced by the amount necessary to compensate for the deficiency. In Texas, however, the burden is on the party seeking recovery for substantial performance, in this case Matador, to "furnish the evidence to properly measure the deductions allowable necessary to remedy the defects and omissions." *Atkinson, supra; BPR Construction & Engineering, Inc. v. Rivers*, 608 S.W.2d 248, 249–50 (Tex.Civ.App.-Dallas 1980, writ ref'd n.r.e.). Failure to meet this burden prevents any recovery. *Id.; Ryan v. Thurmond*, 481 S.W.2d 199 (Tex.Civ.App.-Corpus Christi 1972, writ ref'd n.r.e.). This is the so-called *Atkinson* rule.

Post contends that Matador failed to introduce any evidence of the damages caused by defects in its performance, and accordingly, under *Atkinson*, Post's motion for judgment notwithstanding the verdict, attacking the jury's finding of substantial performance should have been granted. For example, Post argues that Matador gave the jury no indication of what reasonable deduction was required for the early, crooked, drilling that was subsequently abandoned, or for the equipment lost and additional costs incurred after the pipe became stuck. Without such data, according

to Post, the jury's attempts to arrive at an appropriate award were necessarily speculative, and therefore there was inadequate evidence under *Atkinson* to support a finding of substantial performance.

In response, Matador argues that its *Atkinson* burden was met by placing the contract in evidence, which described all the various rates applicable to the drilling operations, providing testimony with respect to the work performed on Newberry No. 1, and finally introducing Plaintiff's Exhibit No. 138, Matador's final invoice setting forth the amounts claimed for the various time periods relevant to the case. This evidence was sufficient, according to Matador, for the jury to make any deductions it thought necessary if it found any of the work was performed inadequately. Even if this was not sufficient, Matador continues, any deficiency in its proof was abundantly cured by Post's evidence of damages in support of its counterclaim. As noted above, Post introduced an extensive list of "excess" costs attributed to the fishing operations and the delays and damages caused by the deviation of drilling and subsequent sticking of the pipe. Thus Matador claims this case is distinguishable from *Atkinson* and others in which no evidence of appropriate deductions was introduced at all by either party.

Although the Texas courts have not discussed in any great detail how a plaintiff meets the *Atkinson* burden, it is reasonably clear that the burden is one only of producing *some* evidence. *See BPR Construction & Engineering, Inc. v. Rivers*, 608 S.W.2d 248, 250 (Tex.Civ.App.-Dallas 1980, writ ref'd n.r.e.) (plaintiff has "burden of introducing evidence to properly measure the defects and omissions"). We observe that in cases where some evidence is introduced by both parties, the Texas courts are concerned only with the sufficiency of the evidence as a whole. *See, e. g., Dietz Memorial Co. v. Texas Steel Bldg. Co.*, 578 S.W.2d

principles of Texas law had been reviewed in defendant's trial brief and in discussions with the district court. Post's objections were not raised for the first time in the motion for judg-

ment notwithstanding the verdict, but had been before the district court throughout the trial. This issue is properly preserved on appeal.

872 (Tex.Civ.App.-Waco 1979, writ ref'd n.r. e.); *Tenneco Oil Co. v. Padre Drilling Co.,* 445 S.W.2d 247 (Tex.Civ.App.-Waco 1969), *aff'd, Tenneco Oil Co. v. Padre Drilling Co.,* 453 S.W.2d 814 (Tex.1970); *Garland Grain Co. v. Bailey,* 393 S.W.2d 945 (Tex.Civ.App.-Dallas 1965, writ ref'd n.r.e.).

The test of a burden of production is whether the evidence is sufficient to withstand a directed verdict. *See* McCormick, Handbook of the Law of Evidence § 338 (2d Ed. 1972). State rules such as *Atkinson* allocating the burden of proof are substantive and control in diversity cases, *see Eastern Airlines, Inc. v. McDonnell Douglas Corp.,* 532 F.2d 957, 990 (5th Cir. 1976), however federal courts in diversity cases apply a federal test for determining whether the evidence is sufficient to defeat motions for directed verdict or judgment notwithstanding the verdict. *Cole v. Elliott Equipment Co.,* 653 F.2d 1031, 1033 n.4 (5th Cir. 1981); *Boeing Co. v. Shipman,* 411 F.2d 365, 368–70 (5th Cir. 1969). When making such an inquiry, the court examines all the evidence in the record, as produced by both parties, to determine if there is substantial evidence opposed to the motion. *Henry v. Ford Motor Co.,* 553 F.2d 46, 48 (8th Cir. 1977); *Boeing Co. v. Shipman,* 411 F.2d 365, 374–75 (5th Cir. 1969); *Auto Transport v. Potter,* 197 F.2d 907, 909 (8th Cir. 1952).

When a claim of inadequate proof of damages is made, our concern is that a jury's verdict should not be based on speculation and conjecture. *See, e. g., Natco, Inc. v. Williams Bros. Engineering Co.,* 489 F.2d 639 (5th Cir. 1974). In this case the jury was instructed that in calculating damages it should consider "the reasonable value of any work performed or materials furnished by Matador under the drilling contract (for which Matador has not been paid), less sums, if any, reasonably incurred and paid by Post in order to bring the contract from substantial performance to full performance." Taking into consideration the pleadings, stipulated facts, the contract and Matador's invoice, together with the extensive submissions by Post, we conclude that the jury had ample material to make the necessary calculations, and that it was not required to base a verdict on speculation or conjecture. The district court did not abuse its discretion in denying Post's motion for judgment notwithstanding the verdict or new trial.

Post raises several factual objections to the consideration of its damage evidence for these purposes. First, Post urges that this evidence was submitted on a theory of total breach of contract and therefore is logically distinct from the substantial performance issue. Regardless of the theory for which this evidence may or may not have been introduced, however, it expressly and directly relates to the kind of damage caused by less-than-full performance and nothing prevented the jury from using it for this purpose if it so desired. Similarly, although Post's counterclaim was submitted conditionally, to be answered only if Matador was found to have neither fully nor substantially performed, nothing in the court's instructions or the phrasing of Post's counterclaim precluded the jury from considering all the evidence of damages when calculating Matador's recovery for substantial performance. *Cf. Muller v. Light,* 538 S.W.2d 487, 489 (Tex.Civ.App.—Austin 1976, writ ref'd n. r. e.).

B. Denial of Directed Verdict on Substantial Performance

Post argues that the district court should have directed a verdict that Matador failed to substantially perform with respect to the first fourteen days of drilling, nearly half of which was subsequently abandoned. In support of this argument Post urges this court to find that the parties treated the contract as divisible, with the dividing point being November 2, 1977, and that only the first part of the contract was in issue in this case. It appears, however, that this argument is raised for the first time on appeal. We also note that Post made no objection to the submission of question 3 regarding Matador's substantial performance, which makes no such distinction as to the dates in issue. We normally are precluded from considering issues under these circumstanc-

es. *See, e. g., Excavators and Erectors, Inc. v. Bullard Engineers, Inc.*, 489 F.2d 318, 320 (5th Cir. 1973); Fed.R.Civ.P. 51. We observe nevertheless that the record does not support Post's claim that the parties treated the negotiations ending on November 2 as a dividing point in the contract; on the contrary, Matador's president, John Griffiths, testified on cross-examination that the parties made no concessions regarding their respective claims but agreed to go forward and attempt to complete the well.

▮ Post also argues that, even if drilling operations are viewed as a whole, the contract was not substantially performed because it was significantly more expensive (taking Matador's final bill into consideration) than anticipated. While there was some evidence to suggest that the parties anticipated the well would take approximately thirty days to complete, and therefore cost approximately $110,000, it is quite clear that the contract contained no completion date or any other indication that time was of the essence. Matador persuasively points out that a daywork contract by its nature calls for payment "regardless of the number of days involved." *Haas v. Gulf Coast Natural Gas Co.*, 484 S.W.2d 127, 131 (Tex.Civ.App.—Corpus Christi 1972, no writ). As suggested above, evidence of excessive delays and costs resulting from defective performance may be relevant to reduce Matador's recovery; however, evidence that completion of the contract took longer than expected does not preclude a finding of substantial performance. *See, Todd Shipyards Corp. v. Jasper Electric Service Co.*, 414 F.2d 8, 15 (5th Cir. 1969).

▮ The jury's finding as to substantial performance is supported by substantial evidence. Most significant is the undisputed fact that a well of contract proportions was completed by January 1, 1978. The district court accordingly did not abuse its discretion in refusing to direct a verdict for Post on this issue.

## C. Excessiveness of Verdict

▮ Post contends that the jury's verdict, as a matter of law, exceeds the maximum amount recoverable under the applicable contract provisions. As a preliminary matter, Matador claims that Post has waived these objections because of his failure to object to the form of submission of the damage issues or to propose additional, limiting instructions. Interpretation of a contract, however, is a matter of law reviewable *de novo* on appeal, *First National Bank of Miami v. Insurance Company of North America*, 495 F.2d 519 (5th Cir. 1974), and an appellate court may *sua sponte* review a jury verdict to determine if it exceeds the maximum legally cognizable recovery. *See, Jamison Co., Inc. v. Westvaco Corp.*, 526 F.2d 922 (5th Cir. 1976).

The only category of damages objected to by Post that we can say with confidence is unavailable is the amount claimed under the force majeure clauses. The daywork drilling contract provides that Post will pay Matador $1,000, roughly one-third of the operating day rate, for each day operations are suspended by a condition of force majeure. Force majeure is defined in paragraph 16 of the contract as follows:

> Neither Operator nor Contractor shall be liable to the other for any delays or damage or any failure to act due, occasioned or caused by reason of any laws, rules, regulations or orders promulgated by any federal, State or Local governmental body or the rules, regulations, or orders of any public body or official purporting to exercise authority or control respecting the operations covered hereby, including, the procurance or use of tools and equipment, or due, occasioned or caused by strikes, action of the elements, water conditions, inability to obtain fuel or other critical materials, or other causes beyond the control of the party affected thereby. In the event that either party hereto is rendered unable, wholly or in part, by any of these causes to carry out its obligation under this Contract, it is agreed that such party shall give notice and details of Force Majeure in writing to the other party as promptly as possible after its occurrence. In such cases, the obligations of the party giving the notice shall

be suspended during the continuance of any inability so caused except that Operator shall be obligated to pay to Contractor the Force Majeure Rate provided in Paragraph 4.7 above.

Matador sought $23,500 under the force majeure provisions for the period September 21 to October 15. The evidence shows that during this time operations were suspended while Matador's derrick was off the drill site being repaired. The derrick had broken during Matador's initial attempts to free the drill pipe when it became stuck in the hole.

■ There is no evidence that Matador notified Post that it was claiming such a condition existed, either orally or in writing, and no evidence that this contractual notice requirement was waived by the parties. This failure to prove a necessary condition of recovery is sufficient to make the force majeure clauses unavailable. Moreover, we do not believe a condition of force majeure was shown to exist.

■ Matador was required to show that the cessation of operations during this period resulted from a cause beyond its control, of the same general character as "strikes, actions of the elements, water conditions, inability to obtain fuel or other critical materials." *See, Security Banking & Investment Co. v. Flanagan*, 241 S.W. 702 (Tex.Civ.App.—Texarkana 1922) (principle of *eusdem generis* applied to force majeure clause). The damages to the derrick occurred during normal operations under the control and supervision of Matador, and the delay during this period was not entirely due to causes beyond Matador's control. The parties made express provision elsewhere in the contract for maximum allowable repair time. This is manifestly not the kind of calamitous and unanticipated event that the force majeure clause contemplates. *See, Mainline Investment Corp. v. Gaines*, 407 F.Supp. 423, 427 (N.D.Tex.1976).

Subtracting the amounts claimed under the force majeure clause from Matador's final invoice, it is evident that the maximum recovery would be $165,501.58; $10,849.27 below the jury's verdict. Accordingly, we will remand and direct a remittitur by Matador in the amount of $10,849.27. *Stapleton v. Kawasaki Heavy Industries, Ltd.*, 608 F.2d 571, 574 (5th Cir. 1979), *modified on other grounds, Stapleton v. Kawasaki Heavy Industries, Ltd.*, 612 F.2d 905 (5th Cir. 1980). *See, generally, Gorsalitz v. Olin Mathieson Chemical Corp.*, 429 F.2d 1033 (5th Cir.), *aff'd after remand*, 456 F.2d 180 (5th Cir.), *cert. denied*, 407 U.S. 921, 92 S.Ct. 2463, 32 L.Ed.2d 807 (1972); 11 Wright & Miller, *Federal Practice and Procedure*, § 2820 at 133–34 (1973). In the event Matador does not agree to such remittitur we leave to the district court's discretion the determination whether to make appropriate findings on the record or order a new trial on damages alone.

■ We perceive no plain legal error in the recovery under the remaining contract provisions. Both parties introduced substantial evidence concerning their respective interpretations of the work performed on Newberry No. 1, and we cannot say the jury's verdict is not supported by sufficient probative evidence. *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969). Specifically in reference to Matador's billing for equipment and material, which Post concedes it is under a duty to reimburse, we point out that this evidence was not inherently suspect, as were the estimates of labor costs in the case cited by Post, *Heard v. Howard*, 215 S.W.2d 364 (Tex.Civ.App.—Ft. Worth 1948, no writ), but was sufficient to raise an issue of fact for the jury. *Muller v. Light*, 538 S.W.2d 487, 490 (Tex.Civ.App.—Austin 1976, writ ref'd n. r. e.)

### D. Admissibility of the "Tower Reports"

■ Lastly, Post argues that admission of Matador's daily drilling reports, referred to as tower reports, was error. These reports are on forms labeled "IADC–API Official Daily Drilling Report Form" and contain entries describing the daily operations, bit and drill records, footage and similar information. The tower reports were admitted as business records under

Federal Rule of Evidence 803(6).[3] Post is particularly concerned about the notations describing deviation tests, which bore on the central issue of whether Matador was accurately reporting the drilling, because Post claims these notations are self-serving and highly suspect.

At trial, Matador's president, John Griffiths, testified that he was the custodian of the reports, that it was the ordinary course of business for Matador to make such reports and that these reports were made in the ordinary course of business by persons having knowledge of the events described. The reports were relied on, among other things, for payroll purposes. This was adequate predicate for the admission of the reports. Post charges that Matador could not identify the makers of particular entries, however, it was not necessary to identify each specific maker as long as the above predicate was laid. *United States v. Jones,* 554 F.2d 251 (5th Cir.), *cert. denied,* 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142 (1977). This objection and Post's general complaint that the reports are incomplete and inaccurate are matters going to the weight of this evidence and not its admissibility. *Crompton Richmond Co., Inc. v. Briggs,* 560 F.2d 1195, 1202 n.12 (5th Cir. 1977); *United States v. Gremillion,* 464 F.2d 901, 907 (5th Cir.), *cert. denied,* 409 U.S. 1085, 93 S.Ct. 683, 34 L.Ed.2d 672 (1972). Although Rule 803(6) indicates evidence can be excluded if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness," we find the district court did not abuse its discretion in admitting this evidence. *See, Rosenberg v. Collins,* 624 F.2d 659 (5th Cir. 1980) (records prepared before litigation foreseeable and sufficiently trustworthy to be relied on by the company in conducting its daily affairs, admissible).

3. Rule 803(6) provides that a record is not excluded by the hearsay rule if it is:

 "a memorandum, report, record, or data compilation, in any form, of facts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."

AFFIRMED IN PART; VACATED AND REMANDED IN PART WITH DIRECTIONS TO ENTER REMITTITUR OF $10,849.27, AND FOR SUCH FURTHER PROCEEDINGS AS MAY BE REQUIRED.