**R & B FALCON CORP.**

v.

**AMERICAN EXPLORATION
CO., et al.**

No. Civ.A. H–99–0580.

United States District Court,
S.D. Texas,
Houston Division.

Jan. 26, 2001.

William A Durham, Eastham Watson et al, Houston, TX, for plaintiff.

Larkin C Eakin, Jr, Woodard Hall & Primm, Houston, TX, Thomas L Kirkland, S Craig Panter, Kirkland & Barfield, Jackson, MS, for defendants.

## AMENDED ORDER

GILMORE, District Judge.

Pending before the Court is Defendants' Motion for Summary Judgment. **(Instrument No. 20).** Based on the submissions of the parties and the applicable law, the Court finds that the motion should be **GRANTED.**

### I.

Plaintiff R & B Falcon Drilling Co. (f/k/a Reading & Bates Drilling Co.) ("R & B") brings this action against Defendants American Exploration Company ("American Exploration") and its successor-in-interest, Louis Dreyfus Gas Production Corporation ("Louis Dreyfus")[1] pursuant to the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1331 *et seq.*, for breach of contract.

Plaintiff entered into a contract on May 5, 1997 with AGIP Petroleum Company, Inc. ("AGIP") to provide offshore drilling services. AGIP assigned the drilling contract to Louis Dreyfus in late June 1997 to perform operations offshore Louisiana in the vicinity of East Cameron Block 328, in which Louis Dreyfus owns an interest. The contract contained a *force majeure* clause that required the payment of day rates for the services of R & B's drilling

---

1. In the interest of simplicity, American Exploration will be referred to as Louis Dreyfus.

unit, regardless of delays or damage that occurred as a result of "act[s] of God" or were "reasonably beyond the control" of the party seeking to be excused from performance. (Contract, Instrument No. 21, Exh A at ¶ 1303).

On July 1, 1997, as the drilling unit was being moved into place, it suffered damage to its hull and legs. The following day, R & B wrote to Louis Dreyfus informing them of the difficulties, characterizing the damage as a *force majeure* event." Despite investigations and studies, no one knows what caused the damage to the drilling unit, though experts have suggested that anomalies in the seabed or a mechanical failure in the jacking system may have been responsible. (Bill Ellis Dep., Instrument No. 21, Exh F at 18; Report of Donald Remson, Instrument No. 21, Exh D; Report of W.J. Wilkinson, Instrument No. 22, Exh A at 14). R & B invoiced Louis Dreyfus for the day rate, but did not receive payment. Plaintiff placed liens on East Cameron Block 328.

R & B filed this action on February 24, 1999, alleging that Defendants had breached the contract by failing to pay according to the terms of the *force majeure* clause. (First Amended Complaint, Instrument No. 4).

Defendants filed a counterclaim on April 29, 1999, alleging that when R & B moved the drilling unit into position, it improperly deployed one of the legs, causing damage to the unit. (Instrument No. 5 at 6). Louis Dreyfus contends that the damage was caused by R & B and was not, therefore, a *force majeure* event. (*Id*). As a result, Louis Dreyfus asserts that it did not breach the contract because it was not required to pay the day rate while the drilling unit was undergoing repairs. Louis Dreyfus seeks removal of the liens Plaintiff placed on East Cameron Block 328 on the grounds that "an actual controversy now exists between the parties." (*Id.* at 7).

On March 1, 2000, Defendants filed this motion for summary judgment, arguing that they are entitled to judgment as a matter of law on Plaintiff's claim as well as on their counterclaim. (Instrument No. 20). Defendants argue that Plaintiff cannot demonstrate that the damage to the unit occurred as a result of an "act of God" or was "beyond [its] control" and therefore, cannot recover based on application of the *force majeure* clause. While Plaintiff and its experts candidly admit that they do not know what caused the leg of the rig to bow, Defendants contend that there is no evidence that whatever the anomaly was, it cannot be proven to fall within the *force majeure* parameters. Because it was R & B's responsibility under the contract to take samples of the seabed if necessary, Defendants argue that any anomaly in the seabed was not outside R & B's control. In short, Defendants maintain that they are entitled to summary judgment because in order to recover, R & B must demonstrate what happened to the rig. Because they cannot, Defendants argue, the *force majeure* clause cannot possibly apply.

Plaintiff filed a response on March 21, 2000, arguing that the differing interpretations of the contract and the cause of the accident preclude summary judgment. (Instrument No. 22). Plaintiff argues that in addition to the *force majeure* clause, it alleges that Louis Dreyfus breached ¶ 606 of the contract by failing to notify R & B of any faulty bottom conditions and failing to provide R & B with soil and sea bottom surveys. The Court notes that this is the first time Plaintiff has raised this argument.

Defendants filed a reply on April 4, 2000, arguing that a dispute as to the meaning of a contract is a matter of law

for the court to decide. (Instrument No. 25). Defendants also argue that for purposes of summary judgment, they accept Plaintiff's contention that an anomaly in the sea bed caused the damage to the rig. Finally, Defendants argue that their alleged failure to provide information on the site is not a force majeure event and that the new claim for breach would violate ¶ 909 of the contract which bars recovery for "special, indirect or consequential damages."

## II.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also United States v. Arron, 954 F.2d 249, 251* (5th Cir.1992). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *See Anderson*, 106 S.Ct. at 2510. If the evidence rebutting the motion for summary judgment is only colorable or not significantly probative, summary judgment should be granted. *Id.*, at 2511; *see also Thomas v. Barton Lodge, Ltd.*, 174 F.3d 636, 644 (5th Cir. 1999). The summary judgment procedure, therefore, enables a party "who believes there is no genuine issue as to a specific fact essential to the other side's case to demand at least one sworn averment of that [specific] fact before the lengthy process continues." *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 110 S.Ct. 3177, 3189–89, 111 L.Ed.2d 695 (1990).

Under Fed.R.Civ.P. 56(c), the moving party bears the initial burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial, and for identifying those portions of the record that demonstrate such absence. *See Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986); *see also Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir. 1999).

Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts ... [T]he nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *See Matsushita*, 106 S.Ct. at 1356 (quoting Fed.R.Civ.P. 56(e)) (emphasis in original); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Engstrom v. First Nat'l Bank*, 47 F.3d 1459, 1462 (5th Cir. 1995). To sustain the burden, the nonmoving party must produce evidence admissible at trial. *See Anderson*, 106 S.Ct. at 2514; *see also Thomas v. Price*, 975 F.2d 231, 235 (5th Cir.1992) ("To avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue. . . ."). The Court reviews the facts in the light most favorable to the nonmovant and draws all reasonable inferences in favor of the nonmovant. *See Brown v. Bunge Corp.*, 207 F.3d 776, 781 (5th Cir.2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *See Anderson*, 106 S.Ct. at 2512.

## III.

### A.

In its response to Defendants' motion for summary judgment, Plaintiffs argue

for the first time that in addition to the *force majeure* clause, Defendants breached ¶ 606 of the contract by failing to notify R & B of faulty sea bottom conditions and by neglecting to provide R & B with soil and sea bottom condition surveys. Plaintiff contends that in its complaint, it only asserted a claim for "breach of contract" generically, and did not limit itself to a *force majeure* theory of recovery.

■ Setting aside the possibility that Plaintiff waived any breach of ¶ 606 by failing to object to the survey, Plaintiff's arguments are problematic because its vaguely drafted complaint gave Defendants no notice of this basis for recovery. While FED.R.CIV.P. 8(f) accords a pleading liberal construction, this should not be construed as a requirement that the court construct a claim that a plaintiff has not spelled out in a complaint. *See* 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (2d ed.1990).

■ There are no facts alleged in the complaint that would provide Defendants notice that Plaintiff intended to claim that it was entitled to surveys that Defendants failed to provide. The words "survey" and "seabed" do not even appear in R & B's four-page complaint. It is unfair to permit Plaintiff to broadly allege "breach of contract" but wait until its response to a summary judgment motion to specify which paragraph in the 41–page contract Defendants actually breached. While Rule 8 does not require a party to specify its legal theory of recovery, a plaintiff must include the relevant legal issues and facts. *See Cyprus v. Diskin,* 936 F.Supp. 259, 262 n. 2 (E.D.Pa.1996). *See also Ocaso, S.A. Compania De Seguros Y Reaseguros v. Puerto Rico Maritime Auth.,* 915 F.Supp. 1244, 1253 (D.P.R.1996) ("Fairness dictates that defendants be given a minimum degree of forewarning as to the underlying basis for the relief sought"). Accordingly, the Court will only consider the *force majeure* clause in analyzing R & B's breach of contract claim.

## B.

Defendants argue that because the cause of the accident is unknown, the *force majeure* clause does not apply and they are not liable for the day rate while the rig was being repaired. Even if a seabed anomaly was responsible, Defendants continue, this event does not fall within the *force majeure* clause. Plaintiff contends that an unknown cause, most likely a seabed anomaly, was either an act of God or beyond its control, and that it is, therefore, entitled to payment.

■ "*Force majeure*" is a term that describes a particular type of event which may excuse performance under a contract. *See Perlman v. Pioneer Ltd. Partnership,* 918 F.2d 1244, 1248 n. 5 (5th Cir.1990). To determine whether a certain event excuses performance, a court should look to the language that the parties specifically bargained for in the contract to determine the parties' intent, rather than resorting to any traditional definition of the term. *Id.* Contractual terms are controlling regarding *force majeure* with common law rules merely filling in gaps left by the document. *See Sun Operating Ltd. v. Holt,* 984 S.W.2d 277, 283 (Tex.App.—Amarillo 1998) (citation omitted). "In other words, when the parties have themselves defined the contours of force majeure in their agreement, those contours dictate the application, effect, and scope of *force majeure.*" *Id.*

■ The burden is on the party claiming *force majeure* to demonstrate that an act of God occurred or that the event was beyond the control of the party. *See Matador Drilling Co. v. Post,* 662 F.2d 1190,

1198 (5th Cir.1981); *Sun Operating*, 984 S.W.2d at 289.

> The contract provides, in relevant part: [E]ach party to this Contract shall be excused from complying with the terms of this Contract, except for the payment of monies when due, if and for so long as such compliance is hindered or prevented by riots, strikes, wars (declared or undeclared), insurrection, rebellions, terrorist acts, civil disturbances, dispositions or order of governmental authority, whether such authority be actual or assumed, acts of God (except however adverse sea or weather conditions other than hurricanes), inability to obtain equipment, supplies or fuel, or by any act or cause (other than financial distress or inability to pay debts when due) which is reasonably beyond the control of such party, such cause being herein sometimes called "Force Majeure." (Instrument No. 21, Exh A at ¶ 1303).

■■■■ Determination of the legal operation of a contract is a question of law for the court to decide. *See* 5 MARGARET N. KNIFFIN, CORBIN ON CONTRACTS § 24.30 (3d ed.1998). The contract is not ambiguous, and does not list either unknown causes or seabed anomalies among the events that are acts of God or beyond the control of the parties. An act of God is "an act occasioned exclusively by forces of nature" that "could not have been prevented or escaped from by any amount or foresight or prudence, or by any reasonable degree of care or diligence, or by the aid of any appliances which the situation of the party might reasonably require him to use." BLACK'S LAW DICTIONARY 33 (6th ed.1990). Notably, an act of God requires an act. There is no allegation or evidence of an act, such as a storm or an earthquake, that caused the accident that resulted in the damage to the drilling unit's leg. Even taking as true Plaintiff's prof-

fered explanation, which it admits it cannot demonstrate definitively, there is no act which could properly be attributed to a higher power. Even if an anomaly in the seabed could be considered an act of God, it was Plaintiff's failure to make reasonable inquiry as to the condition of the seabed that caused the accident rather than the anomaly itself. *See Texas & Gulf S.S. Co. v. Parker*, 263 F. 864, 868 (5th Cir.1920) (negligence, not act of God proximately caused loss where party knew or could have ascertained that a hurricane was approaching). As discussed further *infra*, the contract placed this burden on R & B. Accordingly, the accident does not fall within the "act of God" clause of the contract.

■■■ Plaintiff alternatively contends that the accident was "reasonably beyond [its] control" and is, therefore, covered by the *force majeure* clause. To get a sense of what types of events excuse performance, the Court will look to the events enumerated in the clause. *See* CATHERINE M.A. MCCAULIFF, 8 CORBIN ON CONTRACTS § 31.4 (3d ed.1999) (applying *ejusdem generis* principles to *force majeure* clauses). *See also Matador Drilling*, 662 F.2d at 1198 (requiring party claiming *force majeure* to demonstrate that event of same general character as those specifically listed in clause occurred). The clause here lists "riots, strikes, wars [ ], insurrection, rebellions, terrorist acts, civil disturbances, dispositions or order of governmental authority ... inability to obtain equipment, supplies or fuel" as other items reasonably beyond the control of the parties. These events are essentially governmental instability and supply-chain-related events external to actual performance of the contract. A seabed anomaly or a mechanical problem of unknown origin is of a distinctly different character than these listed events in that it is something it relates to

**975**

the set-up and operation of the rig, it is contemplated by other sections of the contract, and it is something that Plaintiff could have detected.

The allocation of rights and responsibilities under the contract indicates that whatever caused the unit's leg to bow was not reasonably beyond Plaintiff's control. Paragraph 501(e) of the contract provides that Plaintiff is responsible for "mobilization of the drilling unit" and paragraph 502 vests Plaintiff with control over its operation. Furthermore, if Plaintiff required sea bottom coring services of the drilling site with professional interpretation, Louis Dreyfus was required to perform such testing and provide interpretation at its own cost. (Instrument No. 21, Exh A at 23 (item 11)). R & B did not request core samples of the site sea bottom.

Plaintiff now complains that Louis Dreyfus did not perform its duties under ¶ 606 in that it failed to inform R & B of faulty bottom conditions and that Louis Dreyfus' sea bottom survey was two years old. (Bill Ellis Dep., Instrument No. 21, Exh F at 20). However, R & B admitted that Louis Dreyfus' survey was accepted by R & B's surveyor as required by ¶ 606. *Id.* at 75. R & B did not reject the survey or request further information, and instead chose to mobilize the drilling unit.

Plaintiff's claim of *force majeure* fails for several reasons. First, an unknown cause or a seabed anomaly is not an act of God because there is no evidence of an act attributable to nature. Second, an unknown cause or a seabed anomaly is not reasonably beyond Plaintiff's control because these events bear little resemblance to the listed excuses for performance and because Plaintiff has not produced any evidence that it is not responsible for the accident that occurred when it mobilized the unit. Plaintiff has not created a fact issue merely by pointing to differing expla-

nations for the accident. The cause of the damage to the unit is insignificant because R & B has failed to carry its burden of identifying a genuine issue of material fact concerning its responsibility. Accordingly, Defendants' motion for summary judgment is **GRANTED.**

The Clerk shall enter this Order and provide a copy to all parties.